LAMAR, Justice,
for the Court:
¶ 1. In this medical-malpractice case, we must decide whether the Circuit Court of Lincoln County abused its discretion by dismissing Quizzie Manning’s case with prejudice. We find that the circuit court did not abuse its discretion by dismissing the case with prejudice; therefore, we affirm the circuit court’s judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. This medical-negligence case arises from Quizzie Manning’s May 16, 2008, visit to King’s Daughters Medical Center’s (KDMC) emergency room. Manning alleges that she sustained injuries as a result of KDMC’s negligence during that visit. On May 7, 2010, nearly two years after Manning’s visit to KDMC and less than ten days before the statute of limitations ran on her claim, attorney Alfred Felder sent KDMC a letter on Manning’s behalf giving KDMC notice of Manning’s intent to sue, as required under Mississippi Code Section 15-1-36(15). On July 14, 2010, Manning, purportedly acting pro se, filed suit against KDMC and other parties. Apparently, Felder drafted Manning’s complaint even though he did not sign it.[1] As Manning filed her complaint pro se, she did not attach a certificate regarding consultation with an expert prior to filing suit, as required under Mississippi Code Section 11-1-58, because she was exempt from the requirement under Section 11 — 1— 58(d).[2]
*112 ¶ 3. The complaint was served on KDMC on November 10, 2010, 119 days after the complaint was filed and one day before Manning’s time for service ran. The complaint included an address for Manning in Brookhaven, Mississippi. On November 18, 2010, KDMC filed its answer and propounded its initial discovery to Manning and served the documents on her by sending them to the address provided in the complaint via first-class mail. More than six months passed without a response from Manning. On June 27, 2011, KDMC filed its first motion to dismiss under Rule 41 of the Mississippi Rules of Civil Procedure or, alternatively, for summary judgment. KDMC noticed a hearing on its motion for August 1, 2011, and again served its motion and notice of hearing on Manning at the address provided in the complaint via U.S. Mail. However, on July 8, 2011, the documents KDMC sent to Manning were returned as “not deliverable as addressed, unable to forward.”
¶ 4. On July 11, 2011, KDMC wrote a letter to Felder and requested that he advise how Manning could be served. KDMC then attempted to have Manning served with its motion and notice of hearing via process server at the address provided in her complaint. However, the process server was unable to serve the documents. Counsel for KDMC represents that the process server was told by the residents at the address that Manning was not there and was currently in Georgia, and that their attorney, A1 Felder, had advised them not to accept the documents or give the process server Manning’s current address. Counsel for KDMC then called Felder in an attempt to obtain Manning’s current address, but was not successful. Felder represented to KDMC’s counsel that he was still reviewing the case and had not yet made a decision as to whether he was going to enter an official appearance. KDMC was unable to serve Manning with its motion or notice of hearing; therefore, it did not move forward with the hearing.
¶ 5. On July 5, 2012, a year later, KDMC filed a supplement to its motion to dismiss or, alternatively, for summary judgment, and renoticed a hearing on the motion for Monday, August 6, 2012. KDMC again served its motion and notice on Manning via U.S. Mail at the address she had provided in her complaint and also served the motion and notice on Felder. On Friday, August 3, 2012, Felder filed Manning’s response to KDMC’s motion. Felder officially entered an appearance in the case on Monday, August 6, 2012.
¶ 6. A hearing on KDMC’s motion to dismiss or, alternatively, for summary judgment, was held on August 6, 2012. At the hearing, counsel for KDMC argued that Felder’s actions were unconscionable and the suit should be dismissed as a sanction. Specifically, KDMC argued that Felder had Manning file a pro se complaint *113 because Felder could not comply with the requirements of Section 11-1-58, and that the suit had been “sitting still in the water for the last two years as a direct result of the acts of counsel in advising his client not to respond, not to accept, and not to advise where she can be found.” KDMC did not argue that it was entitled to summary judgment in the case.
¶ 7. Felder argued that he did not represent Manning in the court until he made an entry of appearance because his “understanding of being represented by an attorney in a piece of litigation is that you’re on the pleadings or you’ve made an entry of appearance, one or the other,” and he had not entered an appearance at the time the complaint was filed. Felder further argued that, because Manning was not represented until he entered his appearance in the case, Manning had properly filed her complaint pro se and was not required to review her case with an expert witness prior to filing suit or to file the certificate contemplated by Section 11 — 1— 58. As to why he had not entered an appearance until August 2012, Felder represented to the circuit court that he had experienced ongoing health problems since January 2010. Felder never denied that he had been involved with the case from the very beginning or that he had been advising Manning since at least the time he sent the notice letter on her behalf.
¶ 8. Felder represented that he did not remember whether he had spoken with Manning’s relatives when the process server was attempting to serve KDMC’s motion, but that normally he would advise someone not to accept papers that were not theirs. Felder also made an issue of the fact that KDMC never filed a motion to compel a response to its discovery and that the ease had been on the docket for only two years, which he argued was not a long time, because many cases have been on the docket for two years or more. Felder argued that, given the totality of the circumstances, Manning’s case should not be dismissed, and that, if he did something wrong, which he denied, he should be sanctioned personally.
¶ 9. During oral argument, the circuit court focused on whether or not it should dismiss the case based on Manning’s behavior over the past two years, at one point asking Felder to give a “compelling reason” why the case should not be dismissed “based on Quizzie Manning’s behavior over a two-year period.” In its bench ruling, the circuit court found that the case involved the worst gamesmanship that the court had ever seen. The court found that Manning personally had been “playing games” and that it would have to decide if Manning’s actions should result in the ultimate sanction of dismissal.
¶ 10. The court noted that Manning, a pro se plaintiff, seemed to have an unusual grasp of the time limits set by the rules, but yet did not realize that it was her duty to provide a mailing address at which she could receive documents related to her case. The court further noted that Manning had responded to KDMC’s motion to dismiss or for summary judgment on the Friday before the Monday hearing, and had never responded to KDMC’s discovery. The court also found the argument that KDMC was required to file a motion to compel to be without merit, in part because the court found Manning did not have any intention to respond to discovery that had been outstanding for two years and because KDMC had no way to serve the motion to compel.
¶ 11. The circuit court found that Manning was not represented by Felder during the two years the case sat on the docket. The court concluded that, while Section 11-1-58 did not require a pro se plaintiff to review her case with an expert witness *114 prior to filing suit or to file a certificate, “[t]his is an extreme example for two years of a pro se plaintiff who would not take part in the litigation process, did not give a valid address. That’s at best. At worst, she took active measures through family members to avoid service of any type of document in this case.” The court reasoned that the consideration the Legislature gave to pro se plaintiffs did not apply in this case because of her obvious actions to avoid participating in the litigation. Therefore, as a result of Manning’s actions, the court ruled that her case would be dismissed with prejudice and KDMC would be granted summary judgment.
¶ 12. In its order, the court found that Manning had filed a pro se complaint but had made no effort to respond to discovery propounded to her for more than two years or to respond to KDMC’s motion to dismiss or, alternatively, for summary judgment until the Friday afternoon before the Monday hearing. The court specifically found that:
[Wjhile § 11-1-58 (requiring a certificate of consultation with a qualified expert) does not apply to a “Pro Se Plaintiff,” the Legislature did not contemplate that an individual citizen be allowed to file a “Pro Se” Complaint (which does not require compliance with Miss.Code Ann. § 11-1-58), and thereafter, at best, not take part in the litigation process she initiated, and not supply the Court and the parties with a current, valid address for service of pleadings, etc. and/or at worst, haring filed suit, take active measures through family members to avoid service of any type of document in this case, thereby maintaining this Pro Se Plaintiffs suit at a literal standstill for two years, until this date.
The circuit court held that, under the circumstances, the motion to dismiss under Rule 41(b) or, alternatively, for summary judgment should be granted and the case dismissed with prejudice. Manning now appeals from the circuit court’s order.
DISCUSSION
¶ 13. Manning raises the following three issues on appeal:
(1) that the circuit court erred in granting KDMC’s motion for summary judgment;
(2) that the circuit court erred in dismissing the case for failure to consult a physician prior to filing suit; and,
(8) that the circuit court erred in dismissing the case under Rule 41(b).
I. Whether the circuit court erred in granting KDMC’s motion for summary judgment.
¶ 14. Manning argues that the circuit court erred in granting KDMC’s motion for summary judgment because she attached a doctor’s affidavit, in which the doctor opined that the treatment Manning received at KDMC deviated from the standard of care, to her response to the motion for summary judgment. Therefore, Manning argues that her response created a material issue of fact that precluded summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure. KDMC argues that Manning’s and Felder’s actions constituted gamesmanship intended to manipulate the judicial system in order to escape the requirements of Section 11-1-58 and that the circuit court’s grant of summary judgment essentially disregarded the affidavit filed on the last business day before the hearing, thirteen months after the motion was filed. KDMC further argues that the standard for considering motions for summary judgment is not relevant to the issues in this appeal, as the circuit court’s decision focused on the acts of the purportedly pro se plaintiff and *115 found those actions justified dismissal with prejudice.
¶ 15. In its motion, KDMC first requested that the circuit court dismiss Manning’s complaint under Rule 41(b) due to her lack of prosecution over the past two years, and alternatively requested that the circuit court grant KDMC summary judgment in the case because Manning had presented no evidence to establish a material question of fact. The circuit court did not find that Manning had failed to establish a material question of fact and did not dismiss her case under Rule 56. Although the bench opinion and order could have been more specific about what rule the court utilized to dismiss the case, the affidavit provided by Manning and whether Manning had created a material issue of fact were never discussed at the hearing or in the order. Rather, the circuit court’s questions at the hearing, as well as its findings at the hearing and in its order, focused on Manning’s lack of participation in the lawsuit for the past two years. We find that the circuit court dismissed Manning’s case under Rule 41(b), not Rule 56. Therefore, we find that Manning’s argument on this issue is misplaced and without merit.
II. Whether the circuit court erred in dismissing Manning’s case for failure to consult with a physician pri- or to filing suit.
¶ 16. Manning argues that, to the extent that the circuit court dismissed her case because she failed to consult with a physician prior to filing suit, the court erred because she filed her case pro se and the statutory requirements of Section 11-1-58(6) did not apply to her. While KDMC argues that Manning and her counsel engaged in gamesmanship to avoid the requirements of Section 11 — 1—58(d), it does not argue that Manning’s failure to consult with a physician prior to filing suit is a proper basis to dismiss her case.
¶ 17. Although the circuit court mentioned the requirements of Section 11-1-58, the court did not hold that Manning should have complied with the statute, even though she was purportedly acting pro se, and did not dismiss her case for failure to consult with an expert prior to filing suit. In fact, the court treated Manning as a pro se plaintiff and recognized that the Legislature intended to provide “special consideration” to pro se plaintiffs under the statute. The court did find that those special considerations did not give a pro se plaintiff license to allow her ease to sit at a standstill for over two years. The circuit court did not base its ruling on Manning’s failure to consult with an expert prior to filing suit, but rather based its ruling on Manning’s conduct after she filed suit. Therefore, we find that Manning’s argument on this issue is misplaced and without merit.
III. Whether the circuit court erred in dismissing Manning’s case under Rule 41(b).
¶ 18. As discussed above, this case was dismissed with prejudice on KDMC’s motion to dismiss under Rule 41(b) or, alternatively, for summary judgment. Rule 41(b) “permits defendants to move for dismissal of any action ‘[f]or failure of the plaintiff to prosecute’ ” and “embodies the tenet that ‘any court of law or equity may exercise the power to dismiss for want of prosecution ... necessary as a means to the orderly expedition of justice and the court’s control of its own docket.’ ”[3] Although the circuit court did not *116 clearly articulate what rule it used to dismiss Manning’s case, it is clear from the transcript and order that the court dismissed Manning’s case due to her failure to prosecute and the two-year delay in her case after she filed suit. Therefore, we analyze this case under Rule 41(b).
¶ 19. We review a lower court’s dismissal of an action under Rule 41(b) for an abuse of discretion.[4] “Because the law favors a trial on the issues on the merits, a dismissal for want of prosecution is employed reluctantly.”[5] “[T]his Court may uphold a Rule 41(b) dismissal when there is: (1) a record of dilatory or contumacious conduct by the plaintiff; and (2) a finding by this Court that lesser sanctions would not serve the interests of justice.”[6] While aggravating factors or actual prejudice “may bolster the case for dismissal,” they are not requirements.[7]

A. Clear record of delay

¶ 20. The circuit court found that Manning initiated her complaint pro se, but failed to provide a valid address for receiving pleadings, made no effort to respond to outstanding discovery for two years, failed to respond to KDMC’s 2011 motion to dismiss for more than one year and in fact did not respond to the motion until the Friday before the Monday hearing. The circuit court concluded that the case was at a “literal stand still for two years” due to Manning’s actions. Manning argues that she was forced to spend time in Georgia receiving assistance from family due to the injuries she sustained as a result of the negligence alleged in her complaint, that no motion to compel discovery was ever filed, and that two years is not a long time for a case to be on the docket.
¶ 21. We find that the record supports a determination that Manning’s conduct resulted in a clear record of delay. Not only did Manning fail to take any action in her ease for two years after filing suit, she failed to provide an address where she could receive pleadings. We have held recently that a plaintiffs failure to respond to discovery for approximately seventeen months supported a finding of a clear record of delay, sufficient to warrant dismissal with prejudice.[8] Additionally, the first action Manning took in her case after filing suit was reactionary, which we previously have considered as a factor supporting a finding of a clear record of delay.[9] Furthermore, the fact that KDMC did not file a motion to compel Manning’s responses to its outstanding discovery does not weigh in her favor, as the test regarding a clear record of delay “focuses on a plaintiffs conduct, not on the defendant’s efforts to prod a dilatory plaintiff into action.” [10] As there is a clear record of delay in this case, a showing of contumacious conduct is not necessaiy.[11]

B. Additional Considerations of Prejudice and Aggravating Factors

¶22. “The trial court may consider prejudice or the presence of a aggravating factor, and these considerations may help to bolster or strengthen a defendant’s case in support of dismissal. These considerations, however, are not a prerequisite to *117 dismissal under Rule 41(b).”[12] Delay alone may suffice for a dismissal under Rule 41(b).[13] In this case, the circuit court did not specifically consider the presence of prejudice or aggravating factors; however, some findings made by the circuit court fall under these considerations.

1. Prejudice

¶ 23. The circuit court did not make a finding regarding prejudice to KDMC. Manning argues that KDMC has not shown any prejudice due to any delay attributable to her actions; KDMC argues that it is impossible to know what prejudice it may experience, as Manning still has not responded to discovery and there is no way to know what information may have been lost.
¶ 24. The circuit court found that Manning, at best, failed to take part in the litigation process she initiated, keeping her case at a standstill for two years. We have determined that a plaintiffs dilatory conduct resulting in his case remaining stale for more than a year amounted to an unreasonable delay, and that “delay alone may result in presumed prejudice to the defendant.”[14]

2. Aggravating Factors

¶ 25. The circuit court did not specifically make a finding regarding aggravating factors. “The aggravating factors include: (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay; (2) the degree of actual prejudice to the defendant; and (3) whether the delay was the result of intentional conduct.” [15] At the hearing, the circuit court found that Manning was not represented by Felder during the two years her case sat at a standstill on the docket and that she was personally “playing games” in her litigation. Furthermore, the circuit court referred to Manning as a pro se plaintiff in its order. Manning continues to argue on appeal that she was not represented by counsel until Felder entered his appearance a few days before the hearing on KDMC’s motion, and has not argued that anyone other than herself was personally responsible for the delay in her case. Therefore, we find that the record supports a determination that Manning — not her attorney — was personally responsible for the delay in her case and that the first aggravating factor is present.
¶ 26. The record does not reflect any actual prejudice to KDMC; thus, we find the seco® aggravating factor is not present. As to the third aggravating factor, the circuit court found that, at best, Manning failed to participate in the litigation she initiated and, at worst, took active measures through family members to avoid service of any type of document in this case. Manning argues that she did not intend to delay her case or absent herself from the litigation, but was forced to seek assistance from out-of-state relatives. We find that the record reflects that Manning knowingly and intentionally left the state and did not provide a forwarding address to receive correspondence related to the lawsuit she personally initiated. Therefore, we find that Manning intentionally failed to participate in her case for two years and, therefore, the third aggravating factor is present in this case.

C. Lesser Sanctions

¶27. We have held that “in determining whether the trial court abused *118 its discretion when dismissing a case pursuant to Rule 41(b), we must consider whether lesser sanctions would better serve the interests of justice.”[16] “Lesser sanctions include ‘fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.’ ”[17] We have stated that, “[wjhere there is no indication that the lower court considered any alternative sanctions to expedite the proceedings, appellate courts are less likely to uphold a Rule 41(b) dismissal.”[18]
¶ 28. We have considered the fact that lesser sanctions were argued before the lower court and that the lower court considered all arguments prior to granting dismissal as factors showing that lesser sanctions were considered.[19] In this case, the circuit court did not specifically address lesser sanctions in its order. However, at the hearing, Felder argued that the case should remain on the docket and that, if he did anything wrong, he should be personally sanctioned instead of the case being dismissed. Felder further argued that dismissal of Manning’s case would be an extreme sanction. The circuit court recognized that it had to “decide if the games that [Manning] played are going to result in the ultimate sanction for her case.” In its order, the circuit court found that, under the circumstances, dismissal with prejudice was the appropriate result. Therefore, the record shows that Manning urged the circuit court to adopt lesser sanctions and that the circuit court considered whether dismissal with prejudice was the appropriate sanction in this case.
¶ 29. We must now consider whether lesser sanctions would better serve the interests of justice in this case and find that they would not. As discussed above, the record clearly shows a two-year delay due to Manning’s conduct and the presence of two of the three aggravating factors. We recently upheld a trial court’s dismissal with prejudice of a case due to plaintiffs failure to respond to discovery or take any action in his case for more than a year.[20] In Holder, a case in which no aggravating factors were present, we found that a less-than-two-year delay resulted in presumed prejudice to the defendant and that the delay alone was enough to support the trial court’s decision to dismiss with prejudice.[21] We find that Manning’s behavior was more egregious than that of the plaintiff in Holder. Therefore, we find that lesser sanctions would not better serve the interests of justice in this case.
¶ 30. Justice Dickinson in dissent opines that the sanction of dismissal was inappropriate because “the defendant filed no motion to compel.” But, to the contrary, our rules and precedent make clear that a motion to compel is not a prerequisite to a motion to dismiss when, as here, there is a total failure of a party to participate in discovery.[22] The dissent’s reliance on Caracci v. International Paper Co., 699 So.2d 546, 557 (Miss.1997), State Highway *119 Commission v. Havard, 508 So.2d 1099, 1104 (Miss.1987), and Beck v. Sapet, 937 So.2d 945, 949-50 (Miss.2006), is misplaced, as all involve improper or incomplete discovery responses as opposed to a total failure to respond. Improper discovery responses are governed by Rule 37(a)(2) and necessitate a motion to compel. A total failure to respond to discovery is governed by Rule 37(d),[23] which states that “[i]f a party ... fails ... to serve answers or objections to interrogatories submitted under Rule 33, after proper service of interrogatories ... the court in which the action is pending on motion may make such orders in regard to the failure as are just,” including an order dismissing the action.[24]
CONCLUSION
¶ 31. For the foregoing reasons and considering our deferential standard of review in these cases, we find that the Circuit Court of Lincoln County did not abuse its discretion in dismissing Manning’s case with prejudice. The judgment of the circuit court is affirmed.
¶ 32. AFFIRMED.
WALLER, C.J., RANDOLPH, P.J., PIERCE AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J.

. KDMC’s counsel represented to the circuit court at oral argument on its motion to dismiss, in its motion to dismiss, and in its briefs filed in this Court that Felder had drafted the pro se complaint. Felder has not denied that allegation.

. Mississippi Code Section 11-1-58 requires an attorney representing a plaintiff contem *112 plating bringing suit against a licensed physician, healthcare provider, or health care practitioner for injuries or wrongful death arising out of medical services to review the facts of the case and consult with at least one expert prior to filing suit, and to conclude that there is a reasonable basis for filing the action. Miss.Code Ann. § 11-1-58 (Supp.2013). A certificate regarding the completion of the pre-suit consultation is to be attached to the complaint. But see Wimley v. Reid, 991 So.2d 135, 138 (Miss.2008) (holding that a complaint may not be dismissed and need not be amended due to plaintiff's failure to attach a certificate, but recognizing that Section 11-1-58 does impose certain pre-suit requirements on plaintiffs that must be met). Section 11-1-58 includes certain exceptions to the pre-suit requirements. In this case, the relevant exception is Section 11-1-58(6), which exempts from the requirements of Section 11-1-58 a plaintiff who is not represented by an attorney.
Miss.Code Ann. § 11-1-58(6) (Supp.2013).

. Holder v. Orange Grove Med. Specialties, 54 So.3d 192, 196-97 (Miss.2011) (citations omitted). See also M.R.C.P. 41(b).

. Holder, 54 So.3d at 196.

. Id. (citations omitted).

. Id. at 197.

. Id.

. Holder, 54 So.3d at 197.

. Hillman, 14 So.3d at 727 (citation omitted).

. Id. (citations omitted).

. Holder, 54 So.3d at 199 (citation omitted).

. Id.

. /¿.(citation omitted).

. Id. at 200.

. Id.

. Id. (citing Am. Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 181 (Miss.1998)).

. Hillman, 14 So.3d at 727.

. Id. (citations omitted).

. Cox v. Cox, 976 So.2d 869, 876 (Miss. 2008).

. Holder, 54 So.3d at 200-01.

. Id.

. Holder v. Orange Grove Med. Specialties, P.A., 54 So.3d 244, 249-50 (Miss.Ct.App.2010) (overruled on other grounds by Holder v. Orange Grove Med. Specialties, P.A., 54 So.3d 192 (Miss.2010)).

. Holder, 54 So.3d at 250.

. Miss. R. Civ. P. 37. See also Palmer v. Biloxi Reg’l Med. Ctr., Inc., 564 So.2d 1346, 1368 (Miss.1990) (holding that if a party fails to respond to discovery, a judge may "impose a sanction of dismissal — absent a court order") and Owens v. Whitwell, 481 So.2d 1071, 1077 (Miss. 1986) (holding "[i]f a party totally fails to respond to an interrogatory or his response is of absolutely no substance, subsection (d) of section 13-1-237 requires no prior order before imposing sanctions”). Section 13-1-237 was the predecessor to Rule 37 and governed discovery sanctions before our rules of civil procedure were adopted. See Caracci, 699 So.2d at 556. The language of Rule 37(d) is identical to the language of section 13 — 1—237(d) interpreted in Owens. See Craft v. Craft, 478 So.2d 258, 265 (Miss. 1985). As such, Owens is clearly applicable and supports affirming the trial court's sanction of dismissal.